Walter M. TAYLOR et al.,
Plaintiffs-Appellants,

v.

BRIGHTON CORPORATION et al.,
Defendants-Appellees.

No. 77–3590.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 11, 1979.

Decided Feb. 14, 1980.

Robert F. Laufman, Allen Brown, Cincinnati, Ohio, for plaintiffs-appellants.

James K. L. Lawrence, Frost & Jacobs, Cincinnati, Ohio, for Brighton & P. & A. Hock.

David W. Peck, Frederick Brockmeier, Cincinnati, Ohio, for Pinkerton, Simpkins, Regenhold.

Diane E. Burkley, Dept. of Labor, Washington, D. C., for amicus curiae Secretary of Labor.

Before ENGEL and KEITH, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

The principal question raised on this appeal is whether the Occupational Safety and Health Act, 29 U.S.C. §§ 651–678, creates an implied private right of action whereby an employee discharged in retaliation for reporting safety violations to OSHA may maintain a suit against his former employer. We affirm the district court's decision that it does not.

## I.

The plaintiffs-appellants are former employees of Brighton Corporation who allege they were discharged in retaliation for reporting safety violations to the Occupational Safety and Health Administration (OSHA)[1] or for opposing the company's retaliatory and discriminatory treatment of such employees.

Section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. § 660(c), prohibits retaliatory discharge of or discrimination against employees who report OSHA violations, and charges the Secretary of Labor to investigate and prosecute meritorious claims of retaliation:

**Discharge or discrimination against employee for exercise of rights under this chapter; prohibition; procedure for relief**

(c)(1) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

(2) Any employee who believes that he has been discharged or otherwise discriminated against by any person in viola-

tion of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, *he shall bring an action in any appropriate United States district court against such person.* In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

(3) Within 90 days of the receipt of a complaint filed under this subsection the Secretary shall notify the complainant of his determination under paragraph (2) of this subsection. (Emphasis added.)

Pub.L.No. 91–596, § 11, 84 Stat. 1602, Dec. 29, 1970.

On June 27, 1975, the appellants complained to the Secretary of Labor that Brighton Corporation had discharged them in violation of § 11(c)(1).[2] In October 1976, the Secretary notified appellants Herring and Taylor that he intended not to file suit on their complaints. While appellant Hinners' case was still open at that time, the Secretary had taken no action on his complaint.[3]

On February 7, 1977, the appellants filed this suit in the district court for the Southern District of Ohio. Claims 1, 2 and 4 of their complaint allege that Brighton discharged them in violation of § 11(c). Claim 3 charges racial discrimination by Brigh-

---

1.  Throughout this opinion, OSHA refers to the Occupational Safety and Health Administration or to the Occupational Safety and Health Act of 1970, as the context indicates.

2.  Since all the appellants were discharged more than 30 days before they complained to the Secretary, Brighton argues that the appellants'

suit is barred regardless of whether § 11(c) creates an implied private right of action. Because we find no private right of action, we need not decide this issue.

3.  The Secretary has since filed suit on behalf of appellant Hinners.

ton.[4] Claims 5 and 6 are civil rights claims filed under 42 U.S.C. § 1985(3) alleging that the defendants conspired among themselves to deprive appellant Herring (claim 5) and all the appellants (claim 6) of the equal protection of the laws and of equal privileges and immunities under the laws. The appellees moved to dismiss.

On September 19, 1977, District Judge Timothy S. Hogan dismissed claims 1, 2, 4, 5, and 6 of the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.[5] With respect to claims 1, 2, and 4 of the complaint, Judge Hogan held that OSHA does not grant employees a private right of action to redress retaliatory dismissals that violate § 11(c). The court dismissed claims 5 and 6 on the ground that the appellants had not made the requisite § 1985(3) showing that the alleged discrimination was based on their membership in a definable class.

This appeal followed. We affirm the district court's order of dismissal. Part II of this opinion holds that there is no implied private right of action under OSHA § 11(c). Part III holds that under the averments of the complaint appellants have not shown the requisite class based animus essential to a § 1985(3) claim.

## II.

In addressing the difficult question whether § 11(c) implies a private right of action, we are guided by the discussion of the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975):

In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 39 [36 S.Ct. 482, 484, 60 L.Ed. 874] (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? See, *e. g.*, *National Railroad Passenger Corp. v. National Assn. of Railroad Passengers*, 414 U.S. 453, 458, 460 [94 S.Ct. 690, 693, 694, 38 L.Ed.2d 646] (1974) (*Amtrak*). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? See, *e. g.*, *Amtrak, supra; Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 423 [95 S.Ct. 1733, 1740, 44 L.Ed.2d 263] (1975); *Calhoon v. Harvey*, 379 U.S. 134 [85 S.Ct. 292, 13 L.Ed.2d 190] (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? See *Wheeldin v. Wheeler*, 373 U.S. 647, 652 [83 S.Ct. 1441, 1445, 10 L.Ed.2d 605] (1963); cf. *J. I. Case Co. v. Borak*, 377 U.S. 426, 434 [84 S.Ct. 1555, 1560, 12 L.Ed.2d 423] (1964); *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 394–395 [91 S.Ct. 1999, 2003–2004, 29 L.Ed.2d 619] (1971); *id.*, at 400 [91 S.Ct. at 2006] (Harlan, J., concurring in judgment).

The parties are in agreement that the appellants are members of the class of persons, employees who report OSHA violations, whom § 11(c) was intended to benefit. Nor is there any argument that retaliatory-discharge actions have traditionally been relegated to state law; the cause of action, if one exists, is solely federal. The ques-

4. Claim 3 was filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and under 42 U.S.C. § 1981. It alleges that Brighton dismissed appellant Taylor because he advocated an affirmative action program for minority groups and because he had complained to the Equal Employment Opportunity Commission about Brighton's racially discriminatory practices.

5. Judge Hogan denied the motion to dismiss claim 3. However, he found there was no just reason for delay with respect to the remaining claims and so entered a final order pursuant to Fed.R.Civ.P. 54(b) dismissing claims 1, 2, 4, 5 and 6.

tions we must address under *Cort v. Ash* are whether there is any indication in the legislative history of OSHA that Congress intended either to create or to deny a private remedy and whether implying one is consistent with the legislative plan.

All the *Cort v. Ash* factors, and particularly those concerning the legislative history of the statute and a private remedy's consistency with the legislative scheme, are signposts that guide the court's larger inquiry: Did Congress intend to create a private right of action in this situation? *See Transamerica Mortgage Advisors, Inc. v. Lewis,* —— U.S. ——, ——, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979) (hereinafter cited as *TAMA v. Lewis*). Congress created the statutory right not to be discharged in retaliation for filing OSHA complaints, and Congress could limit that right's corresponding remedy as it saw fit. Moreover, as the Supreme Court's recent cases make clear, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. University of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). "The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979). With that caveat in mind, we turn to the issue presented in the case at bar.

Since the problem is basically one of statutory construction, we begin with the language of the statute itself. *See TAMA v. Lewis, supra,* —— U.S. at ——, 100 S.Ct. at 245; *Touche Ross & Co. v. Redington, supra,* 442 U.S. at 568, 99 S.Ct. at 2485; *Cannon v. University of Chicago, supra,* 441 U.S. at 689, 99 S.Ct. at 1953. Section 11(c)(2) specifies that an employee who believes that he has been the victim of discrimination as a result of his OSHA-related activity may file a complaint with the Secretary of Labor. The Secretary is to make such investigation as "he deems appropriate" to determine preliminarily whether the employee's complaint is valid. If he finds merit in the complaint, "the Secretary . . . *shall* bring an action" in the district court to obtain all appropriate relief. (emphasis supplied). Section 11(c)(3) directs the Secretary to notify the employee within 90 days whether he deems the complaint justified.

Two points are evident from the statutory language. First, Congress nowhere mentioned private suits to enforce § 11(c). Second, Congress explicitly provided an alternative means of redressing § 11(c) violations. "In view of these express provisions for enforcing the [statutory prohibition], it is highly improbable that 'Congress absentmindedly forgot to mention an intended private action.'" *TAMA v. Lewis, supra,* —— U.S. at ——, 100 S.Ct. at 247 (*quoting Cannon v. University of Chicago, supra,* 441 U.S. at 742, 99 S.Ct. at 1981 (Powell, J., dissenting)).

The legislative history of § 11(c) suggests that Congress intended suits by the Secretary of Labor to be the exclusive means of redressing violations. The language of § 11(c) as finally enacted is the result of a compromise between the Senate version, which contained an administrative enforcement procedure, and the House version, which provided only civil and criminal penalties. The evolution of the Senate's administrative enforcement plan, which formed the basis for the section as enacted, reveals much about the intent of Congress.

As introduced in both the Senate and the House of Representatives, the Occupational Safety and Health bill included no express retaliatory-discharge provision. Rather, the bill contained only a general prohibition against interference with OSHA-related activity:

(e) Any person who forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person while engaged in or on account of the performance of inspections or investigative duties under this Act shall be fined not more than $5,000 or imprisoned not more than three years, or both. Whoever, in the commission of any such acts, uses a deadly or

dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both. Whoever kills any person while engaged in or on account of the performance of inspecting or investigating duties under this Act shall be punished by imprisonment for any term of years or for life.

S. 2193, 91st Cong., 2d Sess. § .9(e) (introduced in the Senate May 16, 1970), *reprinted in* Subcommittee on Labor, the Senate Committee on Labor and Public Welfare, 92d Cong., 1st Sess., Legislative History of the Occupational Safety and Health Act of 1970 (Comm. Print 1971) [hereinafter cited as Legislative History] at pp. 218–19.

There was concern, however, that the possibility of retaliatory discharge might inhibit employees from reporting OSHA violations. *See, e. g.,* H.R.Rep. No. 91–1291, 91st Cong., 2d Sess. 27 (1970), *reprinted in* Legislative History at p. 857. As a result, both the House and the Senate inserted provisions prohibiting discrimination against employees who report OSHA violations. Their enforcement provisions, however, were quite different.

The Senate's predecessor version of § 11(c) established an administrative procedure whereby victims of retaliatory discrimination could obtain relief, including reinstatement and back pay. As reported by the Committee on Labor and Public Welfare, the Senate bill not only gave the Secretary of Labor the power to investigate complaints, but required him to provide the opportunity for a public hearing on the record and in accordance with 5 U.S.C. § 554, the Administrative Procedure Act.[6] If the Secretary found a violation, he was directed to issue a decision and order requiring the person committing the violation to take such affirmative action as might be appropriate to abate the violation, including but not limited to rehiring or reinstatement with back pay. *See* S.Rep. No. 91–1282, 91st Cong. 2d Session, *reprinted in* [1970] U.S.Code Cong. & Admin.News, pp. 5177, 5211. Any person, including the complaining employee, adversely affected by the Secretary's decision could obtain review in the court of appeals for the circuit where the violation was alleged to have occurred.

When the Senate considered the bill, however, it made some important changes. Most significantly, it adopted an amendment creating the Occupational Safety and Health Review Commission as a means of separating the prosecutorial and adjudicative functions which the Committee's bill had combined in the Secretary. Some Senators felt there was an inevitable conflict when the Secretary was called upon to review the validity of safety-violation sanctions imposed by his own inspectors. *See* S.Rep. No. 91–1282, 91st Cong., 2d Sess.

---

**6.** After prohibiting retaliatory discrimination, the Committee's version of the bill went on to create an administrative procedure for enforcement:

> . . . Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, apply to the Secretary for a review of such alleged discrimination. A copy of the application shall be sent to such person who shall be the respondent. Upon receipt of such application, the Secretary shall cause such investigation to be made as he deems appropriate. Such investigation shall provide an opportunity for a public hearing at the request of any party to enable the parties to present information relating to such alleged violation. The parties shall be given written notice of the time and place of the hearing at least five days before the hearing. Any such hearing shall be of record and shall be conducted in accordance with section 554 of title 5, United States Code. Upon receiving the record of such investigation the Secretary shall make findings of fact. If he finds that the alleged violation did occur, he shall issue a decision, incorporating an order therein, requiring the person committing such violation to take such affirmative action to abate the violation as he deems appropriate, including, but not limited to, the rehiring or reinstatement of the employee to his former position with back pay. If he finds that there was no such violation he shall issue an order denying the application, incorporating his findings therein. Judicial review or enforcement of the Secretary's order may be obtained in the manner provided in subsection (d) or (e) of this section. S. 2193, 91st Cong., 2d Sess. § 10(f) (reported out f committee Oct. 6, 1970), *reprinted in* Legislative History at pp. 261–62.

(individual views of Senator Javits and minority views of Senators Dominick and Smith), *reprinted* in [1970] U.S.Code Cong. and Admin.News, pp. 5177, 5220, 5226–27. These Senators had been outvoted in committee on this issue, but were able to gain a majority on the Senate floor. As a result, the version of the bill that passed the Senate allowed the Secretary's OSHA inspectors to impose sanctions for safety violations, but entitled alleged violators to request a hearing before the Review Commission. At that hearing, the Secretary's responsibility was to advocate, not judge, the validity of his inspectors' sanctions; the perceived prosecutorial-adjudicative role conflict was eliminated.

Significantly for our purposes, the Senate also gave the Review Commission the task of conducting hearings on retaliatory-discharge complaints. As under the Committee's version, the Secretary had the duty to investigate complaints, but for the first time his investigation was to precede rather than include a hearing. "If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall so notify the Commission and the Commission shall afford an opportunity for a hearing provided in subsection (c)." S. 2193, 91st Cong., 2d Sess. § 10(f) (1970), *reprinted in* Legislative History at 558. Subsection (c) directed the Commission to "afford an opportunity for a hearing (in accordance with section 554 of title 5, United States Code, but without regard to subsection (a)(3) of that section)," and stated that the Commission's rules of procedure "shall provide affected employees . . . an opportunity to participate as parties to hearings under this subsection." S. 2193, 91st Cong., 2d Sess. § 10(c) (1970), *reprinted in* Legislative History at 554. As in the version reported by the Committee on Labor and Public Welfare, parties aggrieved by the hearing's result could obtain review in the court of appeals.

The Senate's decision to have retaliatory-discrimination hearings conducted by the Review Commission rather than by the Secretary narrowed employees' rights considerably. Under the version of the bill reported by the Committee on Labor and Public Welfare, every complaining employee had been entitled to request and receive both a record hearing and judicial review of the Secretary's decision whether to order relief. Under the version passed by the Senate, however, an employee's only right was to complain to the Secretary. Only those employees whose complaints the Secretary deemed meritorious were entitled to request a hearing. Moreover, judicial review was available only from the Review Commission's decision, not the decision of the Secretary; employees whose complaints the Secretary deemed frivolous had no right to appeal.

The change in the retaliatory-discharge hearing procedure is not explainable as a manifestation of the Senate's desire to avoid a potential conflict between the Secretary's prosecutorial and adjudicative roles. No such potential for conflict existed under the Committee's predecessor version of § 11(c). Unlike its safety-violation review procedures, the Committee bill's retaliatory-discharge provision directed the Secretary to conduct a hearing as part of his investigation, not after his personnel had made a preliminary determination that a violation had occurred. Since the hearing was to be a de novo inquiry rather than a review of an inspector's prior decision, there was no need to commit the decision-making function to an independent panel. Furthermore, even under the version passed by the Senate, the Secretary was directed only to investigate and notify the Review Commission of meritorious complaints; there was no requirement that he argue the employee's case before the Commission. Thus, the concerns that prompted the Senate to create the Review Commission do not explain its decision to have retaliatory-discharge hearings conducted by the Commission in meritorious cases only, rather than by the Secretary in all cases.

A more plausible explanation for the change, we think, is that the Senate wanted the Secretary to screen out frivolous complaints so as not to overburden the hearing body. Under the Committee's predecessor

version, a record hearing was a potential part of the Secretary's investigation in every case, whether meritorious or not. By removing the adjudicative function to the newly created Review Commission, the Senate was able to confine record hearings to cases the Secretary found meritorious. In further recognition of the potential for frivolous retaliatory-discharge complaints, the Senate bill provided that the Secretary need only "cause such investigation to be made as he deems appropriate." Finally, the Senate made no provision for appeal from the Secretary's determination that a complaint was frivolous. These changes suggest that the Senate removed the hearing function to the Review Commission in retaliatory-discharge cases as a means of eliminating the necessity for hearings in cases not found by the Secretary to be meritorious.

By contrast to the Senate's remedial plan, the House's predecessor version of § 11(c) specified that violators would be "assessed a civil penalty by the Commission of up to $10,000" and might also "be subject to a fine of not more than $10,000 or imprisonment of a period not to exceed ten years or both." H.R. 16785, 91st Cong., 2d Sess. § 17(g) (1970), *reprinted in* Legislative History at 1104. The House bill contained no provision whereby employees injured by retaliatory discrimination could obtain relief. *See* Conf.Rep. No. 91–1765, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin.News, pp. 5228, 5235.

The Senate and House conferees agreed to adopt the Senate's remedial approach to retaliatory-discharge violations rather than the House's civil and criminal penalty approach. The House conferees did insist, however, that the Senate's version be amended to specify that the Secretary would prosecute § 11(c) actions and that he would do so in the district courts rather than before the Review Commission. *Id.*

The development of § 11(c), particularly in the Senate, evidences a progressive narrowing of both the employee's right to a hearing on his claim that he was the victim of retaliatory discrimination and his role in securing relief from the alleged violation.

Originally conceived as an investigative forum available to every complaining employee, the hearing evolved first into an administrative procedure applicable only to preselected cases and finally into a formal lawsuit in which the Secretary, not the employee, is the plaintiff. Such a legislative narrowing of the individual employee's rights and role under § 11(c) indicates a Congressional intent to deny alternative remedies. In short, § 11(c)'s legislative history cuts against a private right of action for retaliatory discharge.

Supporting our conclusion that Congress did not intend to create a private right of action under § 11(c) is the inconsistency of such a remedy with the section's enforcement provisions. Congress directed the Secretary of Labor to investigate and file suits to secure relief for employees injured by retaliatory discrimination. In order to find that discharged employees have the right to bring private actions under § 11(c), we would have to conclude that the enforcement mechanism Congress specified was not intended to be exclusive.

> Yet it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *TAMA v. Lewis, supra,* —— U.S. at ——, 100 S.Ct. at 247 (*quoting Botany Mills v. United States,* 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379 (1929)).

*See Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 420–23, 95 S.Ct. 1733, 1738–40, 44 L.Ed.2d 263 (1975); *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974) (hereinafter cited as *Amtrak*). We conclude it to be unlikely that Congress, having deliberately interposed the Secretary's investigation as a screening mechanism between complaining employees and the district courts, intended to permit those employees whose claims are screened out to file individual actions in those same courts.

A private cause of action is simply inconsistent with the enforcement plan provided by Congress.

Appellants' reliance on the Supreme Court's recent decision in *Cannon v. University of Chicago, supra,* is misplaced. In that case, the court found an implied private right of action under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in educational programs receiving federal financial assistance. The statute provides a procedure whereby federal funding of schools that violate Title IX may be terminated; it does not expressly authorize private damage actions. Nevertheless, applying the four-part *Cort v. Ash* test, the Court held that Title IX creates an implied private right of action. Significantly, the Court found that Title IX was explicitly patterned after Title VI of the Civil Rights Act of 1964, which, as Congress was aware, had been construed to create a private remedy for violations. The Court said, "the history of Title IX rather plainly indicates that Congress intended to create such a [private] remedy." 441 U.S. at 694, 99 S.Ct. at 1956.

By contrast, the legislative history of OSHA § 11(c) suggests that Congress intended not to allow private suits to redress retaliatory discrimination. The present case is like *TAMA v. Lewis, supra:* "what evidence of intent exists in this case, circumstantial though it be, weighs against the implication of a private right of action." —— U.S. at ——, 100 S.Ct. at 247. *See also Touche Ross & Co. v. Redington, supra,* 442 U.S. at 573–577, 99 S.Ct. at 2488–89; *Amtrak, supra,* 414 U.S. at 458–61, 94 S.Ct. at 693–94; *Ryan v. Ohio Edison Co.,* 611 F.2d 1170 (6th Cir. 1979) (holding, on the ground that Congress intended to prohibit only harassing lawsuits rather than reaffirmation of debts, that debtors have no implied right

of action under the Bankruptcy Act to prevent creditors from using informal methods to collect discharged debts); *Russell v. Bartley,* 494 F.2d 334, 335 (6th Cir. 1974) (declining to find a private right of action on behalf of employees injured by OSHA safety violations because § 4 of the Act evinces a contrary legislative intent); *Jeter v. St. Regis Paper Co.,* 507 F.2d 973 (5th Cir. 1975) (agreeing with *Russell v. Bartley* ). While the absence of any indication in the legislative history that Congress intended to create a private cause of action under § 11(c) would not necessarily preclude private suits,[7] the existence of a Congressional purpose to deny such a cause of action is controlling. *See Cort v. Ash, supra,* 422 U.S. at 82, 95 S.Ct. at 2089. *Compare Chumney v. Nixon,* 615 F.2d 389 (6th Cir. 1980). (*Chumney* found an implied private right of action under 18 U.S.C. § 113, which provides criminal penalties for personal assaults on any aircraft within the special aircraft jurisdiction of the United States. The statute contains no alternative to private damage actions as a means of relieving victims of illegal assaults, and this court found no indication of Congressional intent either to create or to deny a private right of action.)

The Secretary of Labor filed an amicus brief urging this court to find an implied private right of action under § 11(c). The Secretary says he has neither the resources nor the personnel to handle all § 11(c) complaints adequately. Moreover, he expects the number of such complaints to increase dramatically due to his current campaign to alert employees of their OSHA rights. A private right of action should be implied, the Secretary argues, because individual suits offer the only realistic hope of protecting employees from retaliatory discrimination.

---

7. *But see Cannon v. University of Chicago, supra,* 441 U.S. at 717, 99 S.Ct. at 1968 (Rehnquist, J., (author of the opinion in *Touche Ross v. Redington, supra* ) concurring):

Not only is it "far better" for Congress to so specify when it intends private litigants to have a cause of action, but for this very reason this Court in the future should be extremely reluctant to imply a cause of action absent such specificity on the part of the Legislative Branch.

Mr. Justice Stewart, author of the opinion in *TAMA v. Lewis, supra,* joined in the concurring opinion of Mr. Justice Rehnquist.

The Secretary should address his arguments to Congress, not the courts. In *Touche Ross & Co. v. Redington, supra,* the Supreme Court rejected similar policy arguments for the implication of a private damage remedy under § 17(a) of the Securities Exchange Act of 1934:

SIPC and the Trustee contend that the result we reach sanctions injustice. But even if that were the case, the argument is made in the wrong forum, for we are not at liberty to legislate. If there is to be a federal damage remedy under these circumstances, Congress must provide it. "[I]t is not for us to fill any *hiatus* Congress has left in this area." *Wheeldin v. Wheeler,* 373 U.S. 647, 652, 83 S.Ct. 1441, 1446, 10 L.Ed.2d 605 (1963). Obviously, nothing we have said prevents Congress from creating a private right of action on behalf of brokerage firm customers for losses arising from misstatements contained in § 17(a) reports. But if Congress intends those customers to have such a federal right of action, it is well aware of how it may effectuate that intent. 442 U.S. at 579, 99 S.Ct. at 2490–91.

"The dispositive question" is not whether a private right of action under § 11(c) is desirable, but "whether Congress intended to create any such remedy. Having answered that question in the negative, our inquiry is at an end." *TAMA v. Lewis, supra,* —— U.S. at ——, 100 S.Ct. at 249.

Accordingly, we hold that there is no private right of action under OSHA § 11(c), 29 U.S.C. § 660(c). Claims 1, 2, and 4 of the complaint were properly dismissed.

### III.

The remaining issue is whether claims 5 and 6 of the appellants' complaint state a cause of action under 42 U.S.C. § 1985(3). The district court held that they do not and dismissed. We affirm.

42 U.S.C. § 1985(3) provides a private civil remedy for persons injured by conspiracies to deprive them of their civil rights:

If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indi-

rectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, . . . the party so injured [in his person or property] or deprived [of any right or privilege of a citizen of the United States] may have an action for the recovery of damages . . . against any one or more of the conspirators.

In *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court held that § 1985(3) reaches private conspiracies that are aimed at invidiously discriminatory deprivation of the equal enjoyment of rights secured to all by law. However, the Court cautioned that § 1985(3) was not intended to apply to all tortious, conspiratorial interferences with the rights of others.

The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. See the remarks of Representatives Willard and Shellabarger, quoted *supra,* at 100 [91 S.Ct. at 1797]. The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.

403 U.S. at 102, 91 S.Ct. at 1798 (footnotes omitted).

Claims 5 and 6 of the appellants' complaint allege that the defendants-appellees conspired to deprive all Brighton employees of their constitutionally and statutorily protected rights to bring safety violations to the attention of OSHA, file race discrimina-

tion charges with governmental agencies, belong to a union, and to be free of retaliatory discrimination for having exercised any of the foregoing rights.

The district court held that the complaint did not state a cause of action under § 1985(3) because it failed to allege any class-based discriminatory animus on the part of the defendants. Relying on *Arnold v. Tiffany*, 487 F.2d 216 (9th Cir. 1973), *cert. denied*, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974), Judge Hogan held that "employees who have asserted various constitutional rights and the statutory rights stated in the amended complaint do not make up a class under 42 U.S.C. § 1985(3)." "The action of the defendants was directed at the individual plaintiffs because of their activities, not because of any animus against them as members of some class." *Taylor v. Brighton Corp.*, No. C-1-77-56 (filed Sept. 16, 1977).

The appellants urge that their § 1985(3) claims state a cause of action for class-based discrimination and so should not have been dismissed. Contrary to their original assertion that the appellees conspired to discriminate against all Brighton employees, the appellants now claim the conspiracy was aimed at those Brighton employees who exercised various constitutional and statutory rights. In other words, they assert membership in a class defined solely by the conduct of its members. In support of their argument that conduct can define a cognizable class for § 1985(3) purposes, the appellants cite this Court's decisions in *Cameron v. Brock*, 473 F.2d 608 (6th Cir. 1973), and *Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir.), *cert. denied*, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975).

In *Cameron v. Brock*, a supporter of an incumbent sheriff's opponent was arrested while distributing campaign literature. He brought a § 1985(3) action charging that his arrest was a part of a conspiracy to deprive supporters of the sheriff's opponent of the equal protection of the laws. In affirming the judgment for the plaintiff, we held that "§ 1985(3)'s protection reaches clearly defined classes, such as supporters of a po-

litical candidate. If a plaintiff can show that he was denied the protection of the law because of the class of which he was a member, he has an actionable claim under § 1985(3)." 473 F.2d at 610.

*Glasson v. City of Louisville* was a case in which Louisville police, allegedly in an effort to avoid conflict during a visit by President Nixon, destroyed the plaintiff's anti-Nixon poster but permitted the President's supporters to display their signs. The plaintiff's § 1985(3) suit was dismissed because the district court found no evidence that the discrimination was class-based. This Court reversed on the authority of *Cameron v. Brock*, holding that individuals who are critical of government officials may constitute a clearly defined class for § 1985(3) purposes.

The appellants seek to bring their case within the rationale of *Cameron* and *Glasson*. They argue that the relevant class in this case consists of Brighton employees who have exercised or are suspected of having exercised their rights under the constitution, OSHA, Title VII, and various federal laws dealing with organized labor. The logic of their argument seems to be that, by exercising their constitutional and statutory rights, Brighton employees make themselves members of the relevant class; that their membership in the class singles them out for discriminatory treatment by Brighton; and that, but for their membership in the class, they would not be victimized by the corporation.

■ Appellants' argument, however, misperceives the purpose of the requirement that discrimination, to be actionable under § 1985(3), be class-based. Section 1985(3) is concerned only with conspiracies to deny equality of rights. Referring to § 1985(3)'s legislative history, the Court in *Griffin v. Breckenridge, supra*, found that Congress inserted the language "equal protection of the laws" and "equal privileges and immunities under the laws" by amendment as a means of limiting the "enormous sweep of the original language," which would have made criminal any conspiracy to violate "the rights, privileges, or immunities of an-

other person." 403 U.S. at 100, 91 S.Ct. at 1797. Thus, the gravamen of a claim under § 1985(3) is denial of *equal* protection or *equal* privileges and immunities; a conspiracy to deny everyone a given right is not actionable. The *Griffin* Court imposed the class-based-animus requirement as a means of confining § 1985(3) to its intended purpose: to provide a means of redressing deprivations of equality under the law. 403 U.S. at 102, 91 S.Ct. at 1798.

■ Appellants' complaint, however, does not allege that the appellees conspired to deny them *equality* under the law. Rather, the essence of their claim is that the alleged conspiracy was designed to deny *all* Brighton employees their constitutional and statutory rights to complain about the corporation's safety violations, racial discrimination, and labor practices without becoming victims of retaliation. While the discriminatory retaliation that furthered the alleged conspiracy was directed only at those employees who in fact exercised their rights, the purpose of the alleged conspiracy was to deny the rights of all. Thus, there was no conspiracy to deny *equal* protection or *equal* privileges and immunities. Appellants' purported class is nothing more than the group of Brighton employees whose complaints singled them out for discriminatory treatment. It is a group defined by conduct, but it is not a class cognizable under § 1985(3).

By contrast, the classes recognized in *Cameron* and *Glasson* were defined by their members' beliefs, not their conduct. In both cases, the plaintiffs were supporters of dissident political points of view. Their conduct in distributing campaign pamphlets *(Cameron)* or carrying placards critical of the President *(Glasson)* was important because it identified them as dissidents. Nevertheless, it was the plaintiffs' membership in the dissident class, not their conduct, that singled them out for discriminatory treatment. The Louisville police allowed President Nixon's supporters to display their signs but denied that right to dissidents. Sheriff Brock's deputies presumably allowed his supporters to campaign for his

reelection, harassing only those persons who opposed him. In both cases, the defendants deprived the plaintiffs of their right to speak, not because the plaintiffs chose to exercise that right, but because of what they chose to say. Therefore, *Cameron* and *Glasson* do not support the contention of appellants.

In effect, appellants' claims are similar to those the Ninth Circuit rejected in *Lopez v. Arrowhead Ranches,* 523 F.2d 924 (9th Cir. 1975). In that case, several Arizona farm workers brought an action alleging, *inter alia,* that the defendants had conspired to force their employees to work at substandard wages by hiring illegal aliens to replace any employees who demanded higher wages. In affirming the district court's dismissal of the plaintiffs' § 1985(3) claims, the Ninth Circuit held that the complaint did not allege a conspiracy to discriminate in favor of illegal aliens, but rather a conspiracy to force all workers to accept substandard wages:

> The alleged discriminatory motivation against citizens and those legally present will not suffice. That discrimination does not aim at creating a disparity in rights between the favored and disfavored class; the alleged animus against legal workers is contradicted by plaintiffs' own allegations that defendants deprive both legal and illegal farm workers of statutory protections in terms applicable to all employees. As *Griffin* narrowed the cases in which a deprivation of equal rights is actionable to those where the injury is class motivated, it seems to us a necessary corollary that the class animus alleged be consistent with the deprivation of rights alleged. Here it is not. Instead, the equality of legal rights denied plaintiffs and "illegals" is equality with all remaining workers who are not victimized by the alleged conspiracy. 523 F.2d at 928.

In *Lopez,* as in the present case, the plaintiffs' inability to show that the defendants conspired to deprive them of equality under the laws was fatal to their § 1985(3) claim.

Nor would a class consisting of all Brighton employees satisfy the *Griffin v. Breckenridge* requirement. Certainly, the alleged conspiracy was aimed at depriving only Brighton employees of their rights. However, the class of Brighton employees comprises the entire universe of employees against whom these appellees had the power or incentive to retaliate. An artful pleader could define such a class of discriminatees for any tort. To hold that such a class is cognizable for § 1985(3) purposes would be to make of the section a general federal tort law. It was to avoid just such a result that Congress inserted the "equal protection" and "equal privileges and immunities" language. For the same reason, the *Griffin* Court imposed its class-based-animus limitation. If that limitation is to have any meaning, it must be that § 1985(3) does not reach conspiracies "aimed indiscriminately at all who might profitably be deprived of legal rights." *Lopez v. Arrowhead Ranches, supra,* 523 F.2d at 928.

Since the appellants' complaint does not allege that the conspirators were motivated by class-based animus, it does not state a claim actionable under § 1985(3). *Griffin v. Breckenridge, supra. See also McLellan v. Mississippi Power & Light Co.,* 545 F.2d 919 (5th Cir. 1977); *Lopez v. Arrowhead Ranches, supra; Arnold v. Tiffany, supra,* 487 F.2d 216 (9th Cir. 1973), *cert. denied,* 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974); *Hughes v. Ranger Fuel Corp.,* 467 F.2d 6 (4th Cir. 1972).

The judgment of the district court is affirmed. No costs are taxed. Each party will bear its own costs in this Court.