762 F.2d 1014
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
LESLIE CAMERON ZURC, PLAINTIFF-APPELLANT,
v.
LUCAS COUNTY, OHIO; CLARENCE ROSE, INDIVIDUALLY AND
OFFICIALLY; ATKINS, INDIVIDUALLY AND OFFICIALLY; HON. MELVIN
L. RESNICK, OFFICI LLY; HON. GEORGE M. GLASSER, OFFICIALLY;
HON. ROBERRT V. FRANKLIN, OFFICIALLY; HON. ROBERT
CHRISTIANSEN, OFFICIALLY; HON. RICHARD KNEPPER, OFFICIALLY;
HON. RENO R. RILEY, OFFICIALLY; HON. FRANCIS C. RESTIVO,
OFFICIALLY; JAMES M. HOLZEMER, OFFICIALLY; RAY KEST,
OFFICIALLY AND FRANCIS E. SZOLLOSI, OFFICIALLY, DEFENDANTS-APPELLEES.
 NO. 84-3168
 United States Court of Appeals, Sixth Circuit.
 3/29/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 BEFORE: KENNEDY and WELLFORD, Circuit Judges; and PHILLIPS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Leslie Cameron Zurc, filed this action against several defendants, including Lucas County, Ohio, the Lucas County Commissioners, the County Common Pleas Court judges and certain administrators, alleging that she had been deprived of both property and liberty without due process of law, had been deprived equal protection of the laws and had her first amendment rights abridged by the actions of said defendants in not placing her in a position of full-time employment with Lucas County. Plaintiff sought monetary, declaratory and injunctive relief under 42 U.S.C. Secs. 1983 and 1985. Following extensive discovery the district court granted defendants' motions for summary judgment, holding as a matter of law that plaintiff failed to establish a cause of action, from which ruling plaintiff appeals.
 
 
 2
 Sometime in 1979, plaintiff, then in college, obtained a job as a volunteer probation officer for the Lucas County Adult Probation Department. The next April, plaintiff was hired as an intern and part-time employee of the Toledo-Lucas County Criminal Justice Regional Planning Unit, and worked as a part of the new Court Intake Program. Plaintiff learned in the fall of 1980 that hirings were taking place within this Court Intake Program. Plaintiff subsequently was interviewed by defendant, Rose, the appropriate unit supervisor, for both full and part-time employment in that agency.
 
 
 3
 Plaintiff informed Rose that she would be happier with a part-time position because of her continuing college requirements. An initial purported hiring decision was later allegedly rescinded by Rose, who informed plaintiff that he had decided not to utilize part-time help. Following complaints by plaintiff to the Court Administrator, plaintiff and others were given part-time jobs. In the summer of 1981 plaintiff unsuccessfully applied for a position with the Probation Department as a probation officer. The following February plaintiff once again unsuccessfully interviewed for a position as a probation officer. She claims that at both times she was rejected for the job, and that lesser qualified persons received the desired position.
 
 
 4
 At the same time plaintiff was attempting to obtain a job as a probation officer, she was also attempting to gain full-time employment with the Court Intake Program. She avers that despite her seniority and qualifications, those both junior and with lesser qualifications were promoted from the part-time staff to full-time status. Also, plaintiff claims that less-senior part-time employees were treated more favorably and given more work, in contravention of established policy.
 
 
 5
 Plaintiff, by use of the existing grievance procedure, challenged these actions. She filed grievances in November of 1981 and in June of 1982, both of which were denied. (The second grievance allegedly resulted, however, in assurances that plaintiff would be considered for the next full-time opening.) Zurc also complains that she was not given two full-time available positions in September 1982. Again, in March and April 1983, plaintiff interviewed with the Lucas County Work Release Program, and was not hired, although she claims less qualified individuals were given these jobs.
 
 
 6
 Finally, in May 1983 a full-time Court Intake position became available, which was not advertised; instead, it was immediately filled with a part-time employee upon the recommendation of defendant Rose. Plaintiff grieved this action, claiming the procedure followed was contrary to established policy. This appointment was withdrawn, then, pending the advertisement; plaintiff interviewed for the job, but again it was granted to the same individual. Following this rejection, plaintiff filed this action.
 
 
 7
 Defendants each deny that plaintiff had any right, express or implied, to be granted or even considered for full-time employment in any of the positions she sought. Rather, defendants contend that at all times plaintiff was merely terminable-at-will, without contractual protection to the contrary. They assert additionally that part-time seniority was only one factor to take into account when hiring for full-time work. Other claimed relevant considerations included job performance, supervisors' evaluation reports, and interview impressions. Defendants assert that Zurc received poor evaluations from her supervisors and did not interview well. Based on these admittedly somewhat subjective appraisals, Zurc was not given full-time employment.
 
 1. PROPERTY INTEREST
 
 8
 The district court found that plaintiff had no 'legitimate claim of entitlement to full time employment which creates a property right entitled to constitutional protection.' This decision involved a question of law, not of fact as claimed by plaintiff, and the trial court's conclusion is supported by Board of Regents of State College v. Roth, 408 U.S. 564 (1972), and Perry v. Sindermann, 408 U.S. 593 (1972); compare Arnette v. Kennedy, 416 U.S. 134, reh'g denied, 417 U.S. 977 (1974). Plaintiff simply has noconstitutionally protected right, as she claims, 'to be interviewed' or 'to be properly evaluated,' in the absence of claimed discrimination by reason of race, sex, religious beliefs, or national origin in the absence of any proven 'legitimate claim of entitlement' as a property interest. She was a part-time employee with no contractual right, express or implied, to full-time public employment (particularly in another department). Her expectations were unilateral in respect to the positions she sought in this controversy.
 
 
 9
 In Roth, a landmark case dealing with actionable property interests in employment, plaintiff had been hired for a one-year non-tenured teaching position. Following the expiration of this one year period, the board of regents refused to renew the plaintiff's contract. No hearing was afforded the plaintiff, and for this reason he brought suit under section 1983 alleging a deprivation of property without due process of law. After noting that under Wisconsin law the board possessed 'unfettered discretion' in deciding whether to rehire, the Court stated:
 
 
 10
 To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
 
 
 11
 Roth, 408 U.S. at 577 (emphasis added).
 
 
 12
 Plaintiff's asserted 'rights' were mere abstract expectations on her part, and do not rise to the level of constitutional rights absent unlawful discrimination, not here at issue. Plaintiff's only arguably legitimate claim to full-time employment appears to arise out of an alleged promise to grant her a full-time job with the Court Intake Program. The specifics of this promise, however, are unclear, and it appears that plaintiff at best had only an expectation of obtaining a job at some indefinite future time. An oral 'promise' plaintiff claims to have received for future full-time employment is not sufficiently definite to create a 'legitimate claim of entitlement' to the particular jobs at issue here. Plaintiff had only some 'unilateral expectation' of future permanent employment, see Roth, 408 U.S. at 507, and this does not support her due process claim.
 
 
 13
 Plaintiff further argues that as a matter of policy, the most senior part-time employee was to receive full-time employment within the Court Intake Program. Because she was most senior, she claims that she should have been preferred over others who were given the available jobs. Plaintiff fails to take into account, however, the undisputed fact that other considerations were weighed in making the ultimate job selections. Past performance and the job interview were two of these. Here, defendants assert that plaintiff interviewed poorly and received unfavorable reports in regard to her past performance. It is not this court's function to upset the subjective decision-making process involving these other factors relevant to deciding which candidate should have been hired. See Burns v. Sullivan, 619 F.2d 99 (1st Cir.), cert. denied, 449 U.S. 893 (1980).
 
 
 14
 The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.
 
 
 15
 Bishop v. Wood, 426 U.S. at 349-50.
 
 
 16
 Because we hold that no protected property interest exists, plaintiff could not have been deprived of either procedural or substantive due process. Stevens v. Hunt, 646 F.2d 1168 (6th Cir. 1981). We therefore need not address whether defendants' conduct was so arbitrary or capricious as to deprive her of substantive due process, although we doubt defendants' conduct was of such character under the circumstances of this case.
 
 2. LIBERTY INTEREST
 
 17
 Plaintiff next argues that she was deprived of liberty without due process of law by being denigrated in her 'performance ability,' 'good name,' and 'reputation not only within the various departments of the criminal justice program associated with the Lucas County Court of Common Pleas, but as to inquires from potential employers whom common sense would dictate would inquire from [defendants].' Defendants, however, have not acted in a manner which might affect plaintiffs' 'good name, reputation, honor or integrity,' or otherwise place upon plaintiff a 'stigma or other disability that foreclosed [her] freedom to take advantage of other employment opportunities.' Roth, 408 U.S. at 573. There have been no accusations made by defendants that might have the foregoing effects, and the defendants have not attempted publicly to besmirch plaintiff in any way. Defendants have only declined to choose plaintiff for a position which others sought. See Bishop v. Wood, 426 U.S. 341. No hearing to clear plaintiff's 'good name' is required under the circumstances.
 
 
 18
 Further, if plaintiff has a claim in the nature of defamation, even this does not rise to a constitutional level. See Paul v. Davis, 424 U.S. 693, reh'g denied, 425 U.S. 985 (1976).
 
 3. FIRST AMENDMENT CLAIM
 
 19
 Plaintiff's third claim is that she was, in effect, penalized for speaking out and using the grievance procedure, and thus was denied full-time employment. Although plaintiff does not have a property interest in this case, she still may pursue a valid first amendment claim. Perry v. Sindermann, 408 U.S. 593; Hilderbrand v. Board of Trustees of Michigan State University, 662 F.2d 439 (6th Cir. 1981), cert. denied, 456 U.S. 910 (1982). Before her speech is protected under the first amendment in this context, however, it must focus on a public as opposed to personal concern.
 
 
 20
 In Connick v. Myers, 461 U.S. 138 (1983), the plaintiff was an at-will assistant district attorney in New Orleans. In response to a proposed transfer, the plaintiff wrote out and circulated a questionnaire concerning office transfer policy, office morale, the need for a grievance committee, the leval of confidence in supervisors, and whether employees felt pressured to work in policital campaigns. Because of this act of 'insubordination,' plaintiff was discharged. In addressing the plaintiff's section 1983 action based on the first amendment, the Court adopted the 'public concern' test.
 
 
 21
 We hold . . . that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. Cf. Bishop v. Wood, supra, at 349-350. Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the State.
 
 
 22
 461 U.S. at 147.
 
 
 23
 Plaintiff attempts to distinguish Connick by arguing that she not only was engaged in free speech, but was also engaged in petitioning the government for redress of grievances. In 'petitioning the government,' here Wayne County, plaintiff was acting on her own personal behalf, and was addressing the government as her employer and not as a governing body. In McKinley v. City of Elroy, 705 F.2d 1110, 1114 (9th Cir. 1983), the court stated:
 
 
 24
 Speech by public employees may be characterized as not of 'public concern' when it is clear that such speech deals with individual personnel disputes and grievances and that the information would be of no relevance to the public's evaluation of the performance of governmental agencies . . .. On the other hand, speech that concerns 'issues about which information is needed or appropriate to enable the members of society' to make informed decisions about the operation of their government merits the highest degree of first amendment protection.
 
 
 25
 See also Murray v. Gardner, 741 F.2d 434, 438 (D.C. Cir. 1984), and Sipes v. United States, 744 F.2d 1418 (10th Cir. 1984). Plaintiff's 'speech' may be characterized here clearly to be a personal concern about her own advancement. This does not give rise to a first amendment claim.
 
 
 26
 Based upon the asserted violation of her first amendment rights, plaintiff also claims that she has been denied equal protection quaranteed by the fourteenth amendment. Plaintiff would place herself within the protected class of individuals who have attempted to speak out against government action and who have been denied their first amendment rights. Assuming a first amendment violation were in fact established, plaintiff might have a colorable equal protection claim. Clark v. Whiting, 607 F.2d 634 (4th Cir. 1979). Without a valid first amendment claim on which to base her equal protection argument, however, plaintiff has no legal basis for asserting this claim.
 
 
 27
 Finally, plaintiff's claim under 42 U.S.C. Sec. 1985 also fails. As hereinbefore indicated, there is no constitutional or statutory violation to support her claim. There has thus been no established violation of any privilege or immunity secured plaintiff under the law. See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Further, plaintiff has failed to place herself within a cognizable class for purposes of section 1985. Plaintiff's class is 'nothing more than [a] group of . . . employees whose complaints singled them out for discriminatory treatment. It is a group defined by conduct, but it is not a class cognizable under Sec. 1985(3).' Taylor v. Brighton Corp., 616 F.2d 256, 266 (6th Cir. 1980).
 
 
 28
 Plaintiff's additional claims of error lack merit and require no further extended discussion. For the reasons stated, the judgment of the district court is accordingly AFFIRMED.