520 A.2d 1124

**Kenneth L. SILKWORTH**

v.

**RYDER TRUCK RENTAL, INC.**

**No. 730, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Feb. 9, 1987.
Certiorari Denied June 18, 1987.

Ronald A. Silkworth, Glen Burnie, for appellant.

J. Michael McGuire (William J. Rosenthal, Mark J. Swerdlin and Shawe & Rosenthal, on the brief), Baltimore, for appellee.

Argued before WILNER, ALPERT and POLLITT, JJ.

WILNER, Judge.

Appellant, Kenneth Silkworth, sued his former employer in the Circuit Court for Baltimore County for abusive discharge (Count I), intentional infliction of emotional distress (Count II), and breach of contract (Count III). The court, on motion by appellee, ultimately dismissed all three counts under Md.Rule 2–322, for failure to state a claim upon which relief can be granted. Hence this appeal.

The relevant facts, gleaned from appellant's initial declaration (as to Count I), amended complaint (as to Counts II and III), and certain assertions and exhibits presented by appellant in opposition to the motions to dismiss, are as follows.[1]

---

1. Appellee moved to dismiss all three counts of the original declaration, contending in part that appellant's exclusive remedy, given the facts pled, was under the Maryland Occupational Safety and Health

Appellant had been employed as a "service island/tire man." His job was to change tires on trucks; he had been employed in that capacity for nine years. At the end of December, 1982, appellant complained to the District Manager of the service station that he had not received sufficient training to be able, safely, to change a certain kind of tire known as a "multi-piece rim wheel" and that serious injuries could result if he attempted to change such a tire under improper conditions or without proper training. He requested additional training.

On January 11, 1983, a truck with a "multi-piece rim wheel" came into the shop for repair, and appellant was directed to change the tire. He refused, fearing for his safety, and again requested further training. Two days later, he was discharged, his superintendent contending that his refusal to change the tire (or any multi-piece rim wheel tire) constituted "serious and flagrant acts of misconduct."

Immediately upon his discharge—the same day—appellant filed a complaint under the Maryland Occupational Safety and Health Act (MOSHA), Md.Code Ann. art. 89, § 43. The complaint alleged, with somewhat more detail, the facts outlined above. A representative of the Commissioner of Labor and Industry acknowledged the complaint and undertook to investigate it. On March 4, 1983, the Assistant Commissioner informed appellant as follows:

"My understanding of your claim is that you were terminated on or about January 11, 1983 because you refused to change a split-rim tire due to lack of training. It appears from our investigation that you had previously

---

Act. In response, appellant averred, and offered exhibits to demonstrate, that he had pursued that remedy without success. Although normally a motion under Md.Rule 2–322 is to be decided solely on the basis of the complaint itself, section (b) of the Rule permits the court to consider matters outside the pleadings if presented to and not excluded by the court. The motion then is treated as a motion for summary judgment. The court granted the motion as to all three counts. Appellant then filed an amended complaint limited to a restatement of Counts II and III. A motion under Md.Rule 2–322 was filed in response and was granted.

assisted in changing split-rim tires (nine orders are included in the investigation file). Our investigation also reveals that all the necessary safety equipment was provided to you and the other employees, and your training was reviewed by our investigator.

We have, therefore, determined by our investigation that you did receive training on changing split-rim tires, were provided all necessary safety equipment and you were aware of your job responsibilities and knew that you were required to change split-rim tires. It appears that your concerns are based on the '60 [M]inutes' show which occurred eight months before January 1983.

It is our opinion that there is no evidence to support a claim of discrimination under the MOSH law. We, therefore, are unable to proceed on your behalf in Court against the Ryder Truck Rental, Inc."

At appellant's request, the Commissioner reopened the case to consider certain additional evidence adduced at an unemployment compensation hearing. On August 3, 1983, the Assistant Commissioner informed appellant that he had considered that evidence and that

"The information gathered during MOSH's investigation does not support Kenneth Silkworth's right to refuse to change the split rim tire. MOSH did not find that Ryder Trucks had provided inadequate training for its employees. Accordingly, this case will now be closed. Your tape recordings of the Unemployment Hearing are enclosed."

Appellant did not pursue the MOSHA case further but instead filed this action.

Count I is premised on the assertion that appellee's conduct "was willful and in direct violation of the Maryland Occupational and Safety Act and the public policy of this State, thereby constituting an abusive discharge entitling [appellant] to compensatory and punitive damages." In particular, he argues to us that his discharge "was in violation of 29 CFR 1910.177—Servicing Multi-piece Rim

Wheels, Section (f)" which requires an employer to "establish a safe operating procedure and ... assure that employees are instructed in and follow that procedure."

Count II rests upon the claim that appellee's conduct "was intentional and outrageous, beyond all possible bounds of decency and can only be regarded as atrocious and utterly intolerable in a civilized community ..." and that it caused him, among other things, "severe emotional distress and trauma."

Count III, tacitly recognizing that appellant's employment was "at will," i.e., with no fixed term, was based on a supposed implied contract founded upon certain personnel policies of appellee. In particular, appellant alleged the "progressive discipline policy," which provided:

"1. A FIRST OFFENSE will result in a documented verbal warning with a notice put in your personnel file.

2. A SECOND OFFENSE will result in a written warning to be signed by the employee and supervisor and put into your personnel file.

3. A THIRD OFFENSE will carry a disciplinary action of three days off without pay and again a signed warning put into your personnel file.

4. A FOURTH OFFENSE requiring discipline will result in discharge. Serious offenses will result in immediate discharge."

Alleging that his own conduct did not amount to a "serious" offense, appellant averred that appellee breached its policy by immediately discharging him.

We find no error in the court's rulings and so shall affirm.

### Count I—Abusive Discharge

In *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981), the Court of Appeals reaffirmed the traditional common law rule, long applied in Maryland, that an employment contract of indefinite duration "can be legally terminated at the pleasure of either party at any time." *Id.*

at 35, 432 A.2d 464. It recognized, however, a very limited exception to that rule, permitting an employee to seek recourse when the motivation for his discharge "contravenes some clear mandate of public policy." *Id.* at 47, 432 A.2d 464.

The only "clear mandate of public policy" identified by appellant in this instance is a Federal regulation requiring employers involved with the servicing of multi-piece rim wheels to "establish a safe operating procedure" for servicing those wheels and to "assure that employees are instructed in and follow that procedure." Appellant does not aver any other safety hazards maintained by appellee or that his discharge was prompted by anything other than his refusal to work on multi-piece rim wheels.

The Maryland Occupational Safety and Health laws are contained in Md.Code Ann. art. 89, §§ 28–49D. With the advice of the Occupational Safety and Health Advisory Board, the Commissioner of Labor and Industry is authorized to adopt occupational health and safety standards, in the form of regulations, and to enforce those standards through administrative and judicial proceedings. Employees are authorized to report violations to the Commissioner, to which the Commissioner must respond. *See* § 35(d). Section 38(a) permits any person aggrieved by any order of the Commissioner issued under MOSHA to obtain judicial review in the Circuit Court, but provides that "[t]he findings of the Commissioner with respect to questions of fact, as supported by substantial evidence, shall be conclusive."

Nothing in MOSHA purports to give an employee any private right of action in court for violation of a health and safety standard. Indeed, even for a violation of § 43, expressly prohibiting an employer from discharging or discriminating against employees for exercising rights under MOSHA, the remedy afforded is a complaint to the Commissioner, who alone is authorized to file an action to restrain the violation "and for other appropriate relief including

rehiring or reinstatement of the employee to his former position with back pay."

The issue raised here—whether an action for abusive discharge may be based on an employer's alleged violation of the Occupational Safety and Health law—though one of first impression in the Maryland appellate courts, has been considered by other courts, and the clear prevailing view is in the negative. In *Taylor v. Brighton Corp.*, 616 F.2d 256 (6th Cir.1980), the Court considered at length the legislative history and purpose of the counterpart Federal Act, upon which the Maryland law is patterned. *See J.I. Hass Co. v. Dep't of Lic. and Reg.*, 275 Md. 321, 340 A.2d 255 (1975). Applying the criteria set forth in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975), the *Taylor* Court concluded that Congress did not intend "to allow private suits to redress retaliatory discrimination," 616 F.2d at 263, and that there is no such private right of action. *Id.* at 264.

The U.S. District Court for the District of Maryland reached the same conclusion in terms of the Maryland law. *See Meadows v. Container Research Corp.*, No. Y–82–3353 (D.Md. April 27, 1983), where Judge Young held that "the exclusive remedy for a MOSHA related wrongful discharge" was under art. 89, § 43(b) and that a tort action under *Adler* did not exist for such a discharge. *See also Chekey v. BTR Realty, Inc.*, 575 F.Supp. 715 (D.Md.1983); *Corbin v. Sinclair Marketing, Inc.*, 684 P.2d 265 (Colo.Ct. App.1984); *Byrd v. Fieldcrest Mills, Inc.*, 496 F.2d 1323 (4th Cir.1974).

■ We think that the views expressed in these cases are sound. To the extent that the violation of some standard adopted by the Commissioner can be said to constitute a "clear mandate of public policy" in the first instance, the exclusive remedy for that violation lies under MOSHA. As this case in particular demonstrates, any other view would seriously undermine the coherent administration of MOSHA. The Commissioner investigated the very charge

made by appellant in this case and found no violation. His fact-finding, under the statute, is conclusive; his legal conclusions can be tested by judicial review under the laws and rules governing administrative appeals. What appellant wants is for a court, in an original tort action, to review his factual and legal contentions *de novo* and to reach conclusions contrary to those of the Commissioner. That would emasculate the authority of the Commissioner, however, and would run directly contrary to the clear intent of the Legislature. It would also create the anomalous situation of an employee whose claim is found by the Commissioner to have merit being restricted to the statutory remedy of reinstatement and back pay, but an employee whose claim is found to have no merit being able to seek compensatory and punitive damages from a jury.

### *Count II—Intentional Infliction of Emotional Distress*

The elements of the tort of intentional infliction of emotional distress are set out in *Harris v. Jones*, 281 Md. 560, 380 A.2d 611 (1977). Taken from *Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145 (1974), they are:

"(1) The conduct must be intentional or reckless;

(2) The conduct must be extreme and outrageous;

(3) There must be a causal connection between the wrongful conduct and the emotional distress;

(4) The emotional distress must be severe."

These are stringent standards, and each must be pled and proved with particularity. They have not been pled with anything approaching the requisite particularity. As was the case in *Beye v. Bureau of National Affairs*, 59 Md. App. 642, 658, 477 A.2d 1197, *cert. denied* 301 Md. 639, 484 A.2d 274 (1984), "[a]lthough some of the proper adjectives and adverbs are present, the underlying allegations fall far short of establishing any of the four elements."

### *Count III—Breach of Contract*

As noted, appellant's breach of contract action rests on an alleged company policy providing for discipline short

of discharge for the first three offenses. Even assuming, under the rationale enunciated in *Staggs v. Blue Cross of Maryland*, 61 Md.App. 381, 486 A.2d 798, *cert. denied* 303 Md. 295, 493 A.2d 349 (1985), that this policy, as alleged, rises to a contractual undertaking, we think that appellant has too cavalierly brushed aside the concluding sentence of that policy, quoted in his amended complaint—"Serious offenses will result in immediate discharge." A clear refusal to perform the work one is hired (and paid) to do seems to us to constitute a serious offense justifying a dismissal.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.