**Craig McCARTHY, Plaintiff-Appellant,**

v.

**The BARK PEKING, her sails, equipment, appurtenances, etc., and South Street Seaport Museum, Third Party Plaintiff-Appellee,**

**The State Insurance Fund and Northbrook Excess and Surplus Insurance, Third Party Defendants-Appellees.**

**No. 445, Docket 81–7587.**

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1981.

Decided April 12, 1982.

---

Richard L. Dahlen, Boston, Mass. (Edwin F. Lambert, Jr., New York City, Dahlen & Gatewood, Boston, Mass., and Zock, Petrie, Reid & Curtin, New York City, on the brief), for plaintiff-appellant.

Francis X. Byrn, New York City (William J. Troy III, and Haight, Gardner, Poor & Havens, New York City, on the brief), for third party plaintiff-appellee South Street Seaport Museum.

Raymond C. Green and Susan R. Petito, New York City, filed a brief for third party defendant The State Insurance Fund.

Alan G. Choate, Joseph F. Moore, Jr., Wayne W. Suojanen, and Pepper, Hamilton & Scheetz, Philadelphia, Pa., and Mark O. Kasanin, Richard C. Brautigam, and McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., filed a brief amici curiae for National Maritime Historical Society and National Maritime Museum Assn.

Before TIMBERS, KEARSE and CARDAMONE, Circuit Judges.

TIMBERS, Circuit Judge:

On this appeal from a summary judgment entered on motion of defendant South

Street Seaport Museum, pursuant to Fed.R. Civ.P. 54(b),[1] in the Southern District of New York, Whitman Knapp, *District Judge*, dismissing an action in which plaintiff, an employee of the Museum, sought damages and other relief as the result of his fall from a bosun's chair suspended by a gantline on the Bark Peking while the latter was berthed at the Museum, the questions presented are (1) whether the district court correctly ruled that plaintiff was not engaged in "maritime employment" so as to bring him within the definition of an employee in § 2(3) of the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 902(3) (1976);[2] and (2) whether the district court correctly ruled that plaintiff had forfeited his right to claim a wrongful discharge pursuant to § 11(c)(1) of the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 660(c)(1) (1976).[3]

We agree with Judge Knapp's rulings with respect to both questions. We affirm.

### I.

In his opinion dated June 3, 1981, Judge Knapp succinctly described the Bark Peking as follows:

"The [B]ark PEKING, launched in 1911 at Hamburg, Germany, is a four-masted steel-hulled 377-foot vessel weighing 2,883 net tons. Between 1974 and 1976 it was purchased for its present owners, defendant South Street Seaport Museum; towed across the Atlantic to New York; berthed for repairs on Staten Island;

and, ultimately, towed to South Street Seaport. It there serves as a museum and is occasionally rented out to private parties as an entertainment hall. Although it remains capable of being towed, its rudder has been welded in one position and it has not put to sea under its own motive power since the 1930's. It is not subject to inspection by the United States Coast Guard and has not been so inspected. Its present owners affirm that they do not intend ever to return it to active navigation, and nothing in the record before us suggests a contrary intent."

We adopt Judge Knapp's description of the vessel which is supported by the record. We note only that, like all venerable vessels which never die, the Peking would like nothing more than to slip her moorings, ease into the harbor and head for the open seas, with the seagulls in her wake.

Sadly, she is fated not to do so.

### II.

On December 12, 1979, plaintiff Craig McCarthy, a self-styled "historical ironworker and shiprigger," while employed by the Museum, was painting the upper mainmast and spars of the Peking. He was suspended in a bosun's chair which he controlled by a gantline—a length of one-inch manilla line. The gantline "parted", causing plaintiff to fall some 60 feet where he grabbed a stay and thence climbed down another 60 feet to the deck below. He returned to work on March 13, 1980.[4]

1. The district court issued a Rule 54(b) certificate because no adjudication was made with respect to defendants The State Insurance Fund and Northbrook Excess and Surplus Insurance Company, both of whom disclaimed coverage under their respective policies.

2. 33 U.S.C. § 902(3) (1976) provides:

"(3) The term 'employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net."

3. 29 U.S.C. § 660(c)(1) (1976) provides:

"(c)(1) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter."

4. In order to obtain compensation for the injuries he sustained as the result of his fall on December 12, 1979, appellant applied for and received benefits under the New York Workers' Compensation Law.

On March 14, 1980, the day following his return to work, plaintiff, after conferring with members of the staff of the Museum, met with John B. Hightower, the president of the Museum. Plaintiff told Hightower that the Peking was seriously unsafe in several respects. Hightower, believing that plaintiff's conduct amounted to insubordination, fired him.

On June 9, 1980, plaintiff commenced the instant action in the Southern District of New York. In Count I of his complaint, plaintiff alleged admiralty and maritime jurisdiction and asserted a claim under the LHWCA for negligence against the Museum and the Peking, claiming that their negligence caused his fall on December 12, 1979. In Count II of his complaint, plaintiff alleged that the Museum discharged him in violation of his rights under the OSHA and the regulations promulgated thereunder.

Upon the Museum's motion for summary judgment, Judge Knapp, in a well reasoned opinion granted the motion with respect to both counts of the complaint and dismissed the action. From the judgment entered on Judge Knapp's opinion, this appeal has been taken.

### III.

Turning to appellant's claim under the LHWCA, he contends, first, that he was an "employee" within the meaning of § 2(3) of the LHWCA, 33 U.S.C. § 902(3) (1976). Second, he contends that he was injured as the result of the negligence of a vessel within the meaning of 33 U.S.C. § 905(b) (1976), so that his remedies are not limited by the exclusivity provision of the LHWCA, 33 U.S.C. § 905(a) (1976). Since we hold that the record establishes that he was not engaged in maritime employment, we do not reach his second contention.

■ In *P. C. Pfeiffer Co. v. Ford*, 444 U.S. 69 (1979), the Supreme Court explained that the status test for recovery under the LHWCA is not directed at geographical considerations but "refers to the nature of a worker's activities."[5] *Id.* at 78. The fact that appellant's accident took place on the Peking is not dispositive of the question of whether he was engaged in "maritime employment" within the meaning of § 2(3) of the LHWCA.

Our Court, in decisions since *Pfeiffer*, has interpreted the status test to "preclud[e] any application of the LHWCA ... to an employee whose activities do not bear a significant relationship to navigation or to commerce on navigable waters." *Fusco v. Perini North River Associates*, 622 F.2d 1111, 1113 (2 Cir. 1980), *cert. denied*, 449 U.S. 1131 (1981). *Accord, Churchill v. Perini North River Associates*, 652 F.2d 255, 256 n.1 (2 Cir. 1981) (per curiam) (quoting *Fusco*), *cert. granted sub nom. Director, Office of Workers' Compensation Programs v. Perini*, —— U.S. —— (1982). Other courts of appeals have adopted or retained similar tests subsequent to *Pfeiffer*. *E.g., Duncanson-Harrelson Co. v. Director, Office of Workers' Compensation Programs*, 644 F.2d 827, 830 (9 Cir. 1981); *Odom Construction Co. v. Department of Labor*, 622 F.2d 110, 113 (5 Cir. 1980), *cert. denied*, 450 U.S. 966 (1981). The latter two cases rely on *Weyerhauser Co. v. Gilmore*, 528 F.2d 957 (9 Cir. 1975), *cert. denied*, 429 U.S. 868 (1976), a pre-*Pfeiffer* case which stated a requirement that "maritime employment" must have "a realistically significant relationship to 'traditional maritime activity involving navigation and commerce on navigable waters.'" *Id.* at 961, *quoting Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 272 (1972).

■ We hold that appellant has not satisfied the status test. The Peking's rudder has been welded in one position. She has not put to sea under her own power since the 1930's. Her present owners state that they do not intend to return her to active navigation. The LHWCA was intended to apply only to workers employed in activities

---

5. The LHWCA also includes situs requirements which are geographical in nature. *Pfeiffer, supra*, at 73–74. There is no suggestion that the LHWCA's situs requirements are not satisfied in the instant case where the accident did take place on navigable waters.

related to vessels which at least have the potential to engage in navigation or in commerce on navigable waters. The Peking no longer has that potential.

The cases cited by appellant do not support a contrary conclusion. For example, in *Arbeeny v. McRoberts Protective Agency*, 642 F.2d 672 (2 Cir.), *cert. denied*, —— U.S. —— (1981), we set aside orders of the Benefits Review Board which denied recovery on the ground that the petitioner pier guards were not engaged in "maritime employment" within the meaning of § 2(3). In that case the dispositive factor was that petitioners' "major function . . . was to protect against the loss of cargo which unquestionably serves a maritime purpose—the safe transit of goods shipped by sea." *Id.* at 675. Appellant's work in the instant case served no such purpose.

Likewise, appellant's reliance on *Mississippi Coast Marine, Inc. v. Bosarge*, 637 F.2d 994 (5 Cir.), *modified*, 657 F.2d 665 (1981), is misplaced. There, the Fifth Circuit reviewed an order of the Benefits Review Board which affirmed an award to respondent who, at the time of his injury, was working on a pleasure boat in his employer's boatyard. Respondent's usual work was that of a land-based carpenter in the boatyard. The Fifth Circuit affirmed the award because "[i]t is difficult to conceive of an activity more fundamental to maritime employment than the building and repair of *navigable* vessels." *Id.* at 998 (emphasis added). Appellant's work in the instant case, unlike that in *Bosarge*, bore no relationship to navigation or commerce on navigable waters.

We hold that, since appellant was not engaged in "maritime employment" within the meaning of § 2(3) of the LHWCA, the district court correctly granted the Museum's motion for summary judgment with respect to Count I.

## IV.

This brings us to appellant's second count which alleged that his discharge was discriminatory in violation of § 11(c)(1) of the OSHA, 29 U.S.C. § 660(c)(1) (1976), because he had complained that the Peking was unsafe. The district court granted summary judgment as to this count on the ground that appellant had failed to file a timely complaint with the Secretary of Labor, as required by § 11(c)(2) of the OSHA, 29 U.S.C. § 660(c)(2) (1976).[6]

Appellant now urges us to hold that there is a private right of action under § 11(c)(1) of the OSHA. The Sixth Circuit declined to imply such a right of action in *Taylor v. Brighton Corp.*, 616 F.2d 256 (6 Cir. 1980). In the instant case, we hold that there is no need for us to reach this question, since appellant did not exhaust the administrative remedies which were available to him.

Whether § 11(c)(2) precludes a private right of action under § 11(c)(1), as the Sixth Circuit held in *Taylor*, appellant first must utilize the remedies provided by Congress. *See, e.g., McKart v. United States*, 395 U.S. 185 (1969). Appellant failed to file a timely complaint with the Secretary. The word "may" in § 11(c)(2) does not mean that the remedy provided for in that section is merely one of several alternatives. While we do not reach the question whether there is an implied private right of action under § 11(c)(1), we do hold that, even if one existed, it could be invoked only after the filing of a timely complaint with the Secretary had proved fruitless.

---

**6.** 29 U.S.C. § 660(c)(2) (1976) provides:

"(2) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown, to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay."

We hold that, since appellant failed to exhaust his administrative remedies, the district court correctly granted the Museum's motion for summary judgment with respect to Count II.

Affirmed.

KEARSE, Circuit Judge, concurring:

I concur in the judgment of the Court and in Parts I–III of the majority opinion. With respect to Part IV of that opinion, I agree that plaintiff may not recover, but I do so because I conclude that, for the reasons set forth in *Taylor v. Brighton Corp.*, 616 F.2d 156 (6th Cir. 1980); *see also Pavolini v. Bard-Air Corp.*, 645 F.2d 144, 146 n.3 (2d Cir. 1981), there is no implied right of action under 29 U.S.C. § 660(c).