Noah ECHARD, Jr.

v.

Wilford G. DEVINE and Consolidation Coal Company.

Civ. No. 84–48–C(M).

United States District Court, N.D. West Virginia.

Nov. 21, 1989.

Dana R. Shay, Fairmont, W.Va., for plaintiff.

Robert M. Steptoe, Jr. and Robert J. Schiavoni, Clarksburg, W.Va., for defendants.

FRANK A. KAUFMAN, Senior District Judge.*

This age discrimination and retaliatory discharge case was originally commenced in the Circuit Court of Monongalia County, West Virginia. Citing to questions arising under the laws of the United States, defendants removed this action to this federal court in February, 1984, pursuant to 28 U.S.C. § 1441(b). In May 1987, plaintiff moved voluntarily to dismiss his federal cause of action for age discrimination and to remand this case to the state court. That motion was denied by this Court on August 3, 1987.[1] Since that date, discovery has been completed and defendants have moved for summary judgment. For the reasons stated in this opinion, that motion will be granted.

In July 1973, plaintiff, Noah Echard, was hired as a foreman by defendant Consolidation Coal Company (Consolidation) at the Blacksville # 2 Mine in Wana, West Virginia. After nine years of employment, Echard was discharged on February 2, 1982. In the course of deposing Echard, counsel for defendants raised questions about numerous occurrences of alleged violations of work standards by plaintiff. However, the record contains no detailed information in form appropriate pursuant to Fed.R.Civ.P. 56 supporting those allegations. Accordingly, this Court addresses defendants' summary judgment motion as if no such violations by plaintiff in fact occurred.

After finishing a shift on January 27, 1982, plaintiff was confronted by Bud Bell, another Consolidation employee, allegedly about deficiencies in plaintiff's work performance. Soon after, an altercation developed. Specific details about what precipitated the fight are unclear, but plaintiff was fired on February 2, 1982. Consolidation has rules against fighting, but of the persons involved in the incident, only plaintiff was discharged.

Plaintiff filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC) on November 1, 1982, alleging that at the time of his discharge, plaintiff was 56 years old and lacked approximately one year of employment with Consolidation before his retirement benefits vested. After conducting an investigation into that charge, the EEOC determined that it would proceed no further with processing the charge, and issued a "private right to sue" letter. Plaintiff at no time has filed any charges with the West Virginia Human Rights Commission with regard to the said matter.

---

* Senior United States District Judge for the District of Maryland, sitting by designation.

1. In a Memorandum and Order filed August 3, 1987, this Court quoted the following: "A ... plaintiff cannot precipitate a remand of the action [properly removed under 28 U.S.C. § 1441] by amending the complaint to eliminate the federal claim." 14A C. Wright and A. Miller, *Federal Practice and Procedure* § 3722 at 276–78 and cases cited thereat.

On January 27, 1984, plaintiff filed his complaint in this case in the Circuit Court of Monongalia County, West Virginia, naming as defendants Consolidation and Wilford G. Devine, plaintiff's supervisor. In his complaint, plaintiff alleges that his discharge was (1) retaliatory and in violation of federal and state laws and (2) in violation of federal and state age discrimination statutes. Plaintiff asserts that he had an implied employment contract with Consolidation, under which plaintiff (1) could not be terminated in violation of the laws and public policy of the United States or of the State of West Virginia, (2) could not be discharged in retaliation for his efforts to comply with any of those laws, and (3) could not be discharged or discriminated against because of his age. Plaintiff states that during the course of his employment, he became concerned about Consolidation's disregard of certain safety procedures, and that he was eventually fired, *inter alia,* in retaliation for his efforts to have Consolidation comply with the laws and policies of the United States and of the State of West Virginia. Echard also contends that his discharge was a direct result of his age. Echard claims damages for those violations of his rights and for infliction of emotional distress. Additionally, Echard seeks punitive damages.

Defendants, in response, say that (1) plaintiff's claim of retaliatory discharge is preempted by the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 801, *et seq.* (FMSHA), and that that statute provides the exclusive remedy for a retaliatory discharge claim against a mining employer; (2) plaintiff's claim of retaliatory discharge is barred by plaintiff's failure to exhaust his administrative remedies provided by both state and federal statutes; (3) plaintiff is barred from pursuing his age discrimination claim (presumably pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* (ADEA)) for failure to file a charge with the West Virginia Human Rights Commission; and (4) plaintiff was properly discharged for fighting and that his discharge was in no way related to his age.

In this opinion, this Court concludes that plaintiff does have a state law claim for retaliatory discharge which has not been preempted by federal law, that plaintiff does not have a federal cause of action for retaliatory discharge, that plaintiff has lost his federal age discrimination claim by failure to exhaust his West Virginia remedies in that regard, and that plaintiff should pursue his claims under West Virginia law for retaliatory discharge and age discrimination, on remand, in the courts of West Virginia.

### Retaliatory Discharge

West Virginia is an at will employment state; nevertheless, in *Harless v. First National Bank of Fairmount,* 162 W.Va. 116, 246 S.E.2d 270 (1978), the Supreme Court of West Virginia wrote that

the rule giving the employer the absolute right to discharge an at will employee must be tempered by the further principle that where the employer's motivation for the discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by the discharge.

*Id.* 246 S.E.2d at 275 (footnote omitted). Further, that Court has recognized the existence of a tort of retaliatory discharge independent of the administrative remedies available through the FMSHA and its West Virginia counterpart, W.Va.Code § 22A–1A–20. *Wiggins v. Eastern Associated Coal Corp.,* 357 S.E.2d 745 (W.Va. 1987). In *Wiggins,* the Court concluded that the remedies provided by those federal and state statutes were not totally adequate because they provided only back pay and equitable relief and did not make available compensation for the infliction of emotional distress and/or punitive damages when the latter are appropriate.

In response, defendants maintain that the remedy provided by FMSHA is exclusive and preempts all of plaintiff's state law claims with respect to plaintiff's alleged retaliatory discharge for his discovery and reporting of mine safety violations. Defendants contend that because

Congress enacted the FMSHA for the purpose, *inter alia*, of protecting miners from retaliatory discharge, Congress intended that the federal statutory remedy be exclusive. Defendants further assert that no private right of action under federal law is implied in the FMSHA remedial scheme.

### *Federal Preemption as to Retaliatory Discharge*

■■■■ This Court notes at the outset that because of the interest in uniformity regarding the application of a federal statute of the type of the FMSHA, a state court's determination with regard to the preemptive scope and effect of such a federal statute, while entitled to careful consideration, is not controlling. *Sola Electric Co. v. Jefferson Electric Co.*, 317 U.S. 173, 175–77, 63 S.Ct. 172, 173–74, 87 L.Ed. 165 (1942); *Standard Oil Co. of California v. Johnson*, 316 U.S. 481, 483, 62 S.Ct. 1168, 1169, 86 L.Ed. 1611 (1942).

> It is well established that within constitutional limits Congress may pre-empt state authority by so stating in express terms. Absent explicit preemptive language, Congress' intent to supersede state law altogether may be found from a " 'scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because the Act 'of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because 'the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose.' " Even where Congress has not entirely displaced state regulation in a specific area, state law is pre-empted to the extent that it actually conflicts with federal

law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Pacific Gas and Electric Co. v. State Energy Resources Conservation & Development Commission*, 461 U.S. 190, 203–04, 103 S.Ct. 1713, 1721–22, 75 L.Ed.2d 752 (1983) (citations omitted). *See Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984).

The FMSHA contains detailed remedial provisions for alleged discrimination against employees who report or attempt to report safety violations. Nevertheless, those FMSHA provisions do not appear to preempt all state law in that area, particularly since the Congress has indicated a desire for "broad" construction in order fully to realize the FMSHA's remedial purposes. *See* Senate Rep. No. 95–181, 95th Cong., 1st Sess. 36, *reprinted in* 1977 U.S. Code Cong. & Admin.News 3401, 3436 (hereinafter cited as S.Rep. No. 95–181).

The FMSHA does not contain any "explicit pre-emptive language," *Pacific Gas and Electric Co.*, 461 U.S. at 203, 103 S.Ct. at 1722. Nor is there any specific indication in that Act of " ' "a scheme of federal regulation ... so pervasive ... that Congress left no room for the States to supplement it" ...' " *Id.* at 204, 103 S.Ct. at 1722. But the Senate Report does reveal the desire of Congress to encourage whistle-blowing—and to make it as risk-free as reasonably appropriate. That would seem to negative a desire by the Congress to preempt all state law protections. Further, there would not seem to be any direct conflicts between the state and federal provisions at issue here.[2] In addition, the area

---

**2.** In *Wiggins,* the Supreme Court of West Virginia stated that the federal statute provides only limited remedies. Congressional intent would seem to indicate a desire for broad remedies. The Senate Report detailing the purpose of the Act reads in part:

> It is the Committee's intention that the Secretary propose, and that the Commission require, all relief that is necessary to make the

complaining party whole and to remove the deleterious effects of the discriminatory conduct including, *but not limited to* reinstatement with full seniority rights, back-pay with interest, and recompense for any special damages sustained as a result of the discrimination. The specified relief is only illustrative.

S.Rep. No. 95–181, *reprinted in* 1977 U.S.Code Cong. & Admin.News at 3437 (emphasis added).

of mine safety regulation—and the protection for whistle-blowers—would not appear to resemble, for example, the area of labor law in which there is a strong federal interest in uniform development under the aegis of the federal courts. To the extent that there are no conflicts, the federal enforcement scheme is susceptible of being effectively supplemented by state legislation and/or policies and remedies pursuant to them.

In *Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468 (9th Cir.1984), Judge Wisdom, sitting by designation, wrote that plaintiff's protection from discharge because he complained about mine safety conditions came from his employment contract (and, by extension, from federal labor law), and from the FMSHA under which plaintiff had already proceeded. Judge Wisdom concluded that plaintiff "cannot now seek protection in state law, because he acted in behalf of no state law or policy. Arizona has little interest in enforcing federal law, even if the federal law is incorporated, as Olguin suggests, in the state's general public policy. Olguin explicitly invoked federal law in this cause of action...." *Id.* at 1475. Moreover, Judge Wisdom, noting that plaintiff had, in fact, attempted to proceed under state law, wrote that plaintiff's "complaint, however artfully pleaded, actually stated claims under federal law...." *Id.* at 1476. In contrast, the state involved in this case, West Virginia, seemingly has indicated considerably more of an interest than Arizona in enforcing its own mine safety laws. Thus, in this case, analysis of West Virginia's interests, the lack of preemptive indications in federal legislation, and the lack of a federal cause of action, express or implied, *see* the discussion *infra*, lead this Court to conclude that plaintiff's state law claims are not preempted by federal law.[3]

## Implied Federal Private Right of Action for Retaliatory Discharge

■ Echard's retaliatory discharge claim also raises the question of whether the FMSHA creates an implied federal private right of action. In *Taylor v. Brighton Corp.*, 616 F.2d 256 (6th Cir.1980), the Sixth Circuit explored whether an employee claiming to have been discharged in retaliation for reporting safety violations to the Occupational Safety and Health Administration could maintain a private suit in federal court against his employer. Judge Phillips wrote:

> In addressing the difficult question whether § 11(c) implies a private right of action, we are guided by the discussion the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975):
>
>> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted"—that is, does the statute created a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the state, so that it would be inappropriate to infer a cause of action based solely on federal law?

616 F.2d at 258 (citations omitted).

Focussing on the second and third *Cort* factors and extensively analyzing the legislative history of OSHA, the Sixth Circuit concluded that it is

**3.** In *Snow v. Bechtel Construction Inc.*, 647 F.Supp. 1514, 1518 (C.D.Cal.1986), the Court, citing, *inter alia*, to *Olguin*, held that state law claims of wrongful termination of employment because the employee had complained about safety conditions were preempted by the Atomic Energy Act. The strong exclusive federal interest in connection with that type of claim by the plaintiff in that case would not appear to be present in the within case. Also, *see, Hyles v. Mensing*, 849 F.2d 1213, 1216–17 (9th Cir.1988), and *Vincent v. Trend Western Technical Corp.*, 828 F.2d 563, 565–66 (9th Cir.1987), not applying *Olguin*, and *Norris v. Lumbermen's Mut. Cas. Co.*, 881 F.2d 1144, 1148 (1st Cir.1989), not applying *Snow*.

unlikely that Congress, having deliberately interposed the Secretary's investigation as a screening mechanism between complaining employees and the district courts, intended to permit those employees whose claims are screened out to file individual actions in those same courts. A private cause of action is simply inconsistent with the enforcement plan provided by Congress.

*Id.* at 262–63.[4] *See McCarthy v. Bark Peking,* 676 F.2d 42, 46 (2d Cir.), *vacated and remanded on other grounds,* 459 U.S. 1166, 103 S.Ct. 809, 74 L.Ed.2d 1010 (1982) (holding that even if a private right of action existed under section 11(c) of OSHA, plaintiffs must first exhaust their administrative remedies by filing claims with the Secretary). *See also Braun v. Kelsey–Hayes Co.,* 635 F.Supp. 75, 80 (E.D.Pa. 1986); *Holmes v. Schneider Power Corp.,* 628 F.Supp. 937, 939–40 (W.D.Pa.), *aff'd,* 806 F.2d 252 (3d Cir.1986).

Section 105(c)(1) of the FMSHA provides that:

No person shall discharge or in any manner discriminate against or cause to be discharged or cause discrimination against or otherwise interfere with the exercise of the statutory rights of any miner ... because such miner ... has filed or made a complaint ... of an alleged danger or safety or health violation in a coal or other mine....

30 U.S.C. § 815(c)(1) (1986).

The remainder of that section defines the remedial scheme to be followed by any miner who believes that he has been discriminated against in violation of that provision. *See* § 815(c)(2) and (c)(3). Section 106(a) of the FMSHA provides for review by a United States Court of Appeals of all Federal Mine Safety and Health Commission orders. In enacting the FMSHA, Congress established a complex remedial scheme, including appellate review in federal court, as a source of relief for violations, and did not provide for redress by an individual in a federal district court as an alternative to the administrative process outlined. "In view of these express provisions for enforcing [the statutory prohibition], it is highly improbable that 'Congress absent-mindedly forgot to mention an intended private action.'" *Transamerica Morgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 20, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979) (quoting *Cannon v. University of Chicago,* 441 U.S. 677, 742, 99 S.Ct. 1946, 1981, 60 L.Ed.2d 560 (1979) (Powell, J., dissenting).[5]

In enacting the FMSHA, not only did Congress not provide for a federal district court remedy by any language in the statute itself, but the legislative history is silent in that regard. "Of course, such legislative silence is often encountered in implied right of action cases; it is to be expected that 'the legislative history of a statute that does not expressly create or deny a private remedy will typically be silent or ambiguous on the question.'" *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO,* 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981) (quoting *Cannon,* 441 U.S. at 694, 99 S.Ct. at 1956).

Despite the silence in the legislative history of FMSHA, strong inferences can be drawn from the Senate Conference Committee's Report against the existence of an implied right of action.[6] Although the Conference Committee stated that it "intends [this section] to be construed expansively to assure that miners will not be inhibited in any way in exercising any rights afforded by [this] legislation," other committee

---

4. In *Taylor,* the Secretary of Labor filed an amicus brief, contending that his Department did not have the capacity to handle all of the OSHA complaints which he expected would be filed in the future, and urging the Sixth Circuit to find an implied federal private right of action. The Sixth Circuit rejected that request, noting that "[t]he Secretary should address his arguments to Congress, not the courts." 616 F.2d at 264.

5. In *Transamerica,* Justice Stewart made the above-quoted comments after reviewing the express administrative and judicial provisions for enforcing violations of the Investment Advisers Act of 1940, 15 U.S.C. § 80b–1, *et seq.* (1981). The Court subsequently decided that the Act confers no other private causes of action. 444 U.S. at 24, 100 S.Ct. at 249.

6. The Senate bill was passed in lieu of the House bill.

comments indicate that the intended expansive construction to be given was to be made by the Secretary of Labor and the Federal Mine Safety and Health Review Commission—and not a federal court. S.Rep. No. 95–181, *reprinted in* 1977 U.S. Code Cong. & Admin.News at 3436.[7] The most insightful of those comments is the Committee's discussion of the relief to be granted affected miners: "It is the Committee's intention that the Secretary propose, and *the Commission require, all relief that is necessary* to make the complaining party whole and to remove the deleterious effects of the discriminatory conduct...." *Id.* at 3437 (emphasis added). Although those comments are not conclusive, they do suggest that the intent of Congress was to vest the power to grant relief in an administrative commission rather than in the federal courts.

The underlying purpose and structure of the overall statutory scheme also advise against the conclusion that Congress intended to create an implied private right of action in the federal district courts. The express purpose of the FMSHA is "to protect the health and safety of the Nation's coal or other miners." 30 U.S.C. § 801(g). The Senate Committee reporting on the FMSHA realized that if this goal was to be achieved, "miners will have to play an active part in the enforcement of the [FMSHA]." S.Rep. No. 95–181, *reprinted in* 1977 U.S.Code Cong. & Admin.News at 3435. The Committee was also aware "that if miners are to be encouraged to be active in matters of safety and health, they must be protected against any possible discrimination which they might suffer as a result of their participation." *Id.* Certainly, miners subjected to retaliatory conduct as a result of their FMSHA-related activities are the intended beneficiaries of this legislation. But just as evident is Congress' intent to direct complaints asserting violations of the new statutory right to those possessed with the expertise and experience best to correct the situation. Con-

gress established intricate procedural safeguards to ensure that valid assertions of violations are remedied. Non-frivolous claims are filed by the Secretary before the Commission on behalf of the miner. Congress specifically directed that "[w]henever protected activity is *in any manner* a contributing factor to the retaliatory conduct, a finding of discrimination should be made." *Id.* at 3436 (emphasis added). Since miners can file an action on their own behalf before the Commission if the Secretary determines that no violation occurred, any miner who wishes to claim the existence of discrimination is afforded an administrative-type hearing under the Act. Even the FMSHA's 60–day limit on the filing of complaints with the Secretary is "not to be construed strictly where the filing of a complaint is delayed under justifiable circumstances." *Id.*

A number of remedies are available to effectuate the purposes of the FMSHA once a claimant is before the Commission. Thus, the Commission has the authority to reinstate the complaining miner pending final resolution of the complaint, to afford an opportunity for an expedited hearing and to order appropriate relief, including but not limited to the rehiring or reinstatement of the miner to his former position with back pay and interest.

Those expansive remedial powers, the procedural safeguards to ensure that all complaints are heard and the opportunity for appellate review, insure that the purpose of the anti-discrimination provision of the statute is well-served, without the presence of an implied federal court cause of action. "The comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies. It is, of course, not within our competence as federal judges to amend these comprehensive enforcement schemes by adding to them another private remedy not authorized by Congress." *Northwest Airlines,*

---

7. "The Committee intends that the scope of the protected activities be broadly interpreted *by the Secretary....*" S.Rep. No. 95–181, *reprinted in* 1977 U.S.Code Cong. & Admin.News at 3435

(emphasis added). "The bill requires *the Secretary* to rigorously enforce these rights with discrimination complaints receiving high priority." *Id.* at 3436 (emphasis added).

*Inc. v. Transport Workers Union of America, AFL–CIO,* 451 U.S. at 94, 101 S.Ct. at 1582. Accordingly, Echard's claims in this case based upon an implied federal cause of action for retaliatory discharge will be dismissed. Thus, Echard is confined in this case to proceeding insofar as his retaliatory discharge claims are concerned, under state law, as indicated *supra* in this opinion.

### State Administrative Exhaustion as to Retaliatory Discharge

■ Defendants assert that a litigant claiming a violation of West Virginia law must first exhaust West Virginia state administrative remedies before pursuing a claim in federal court. Plaintiff counters by citing to *Wiggins,* 357 S.E.2d at 748, in which the Supreme Court of Appeals of West Virginia refused to require the appellant to exhaust *state* administrative remedies since he had already "pursued the nearly identical administrative remedies available under the federal mine safety statute."

The relevant portion of the West Virginia Code reads:

> Any miner or a representative of miners who believes that he has been discharged or otherwise discriminated against, ... may, within thirty days after such violation occurs, apply to the appeals board for a review of such alleged discharge, discrimination, or failure to compensate.... Upon receipt of such application, the appeals board shall cause such investigation to be made as it deems appropriate. Such investigation shall provide an opportunity for a public hearing at the request of any party to enable the parties to present information relating to such violation.... Upon receiving the report of such investigation, the board shall make findings of fact. If it finds that such violation did occur, it shall issue a decision within forty-five days, incorporating an order therein, requiring the person committing such violation to take such affirmative action to abate the violation as the board deems appropriate, including, but not limited to, the rehiring or reinstatement of the miner or repre-

sentative of miners to his former position with back pay, and also pay compensation for the idle time as a result of a withdrawal order. If it finds that there was no such violation, it shall issue an order denying the application....

W.Va.Code § 22A–1A–20(b) (1985 Repl. Vol.). In this case, plaintiff has not availed himself of the administrative avenue so provided by that West Virginia statute.

In *Wiggins,* Virginia's highest court did not directly address the issue of exhaustion of state administrative remedies since the appellant in that case had already pursued federal administrative remedies which the Court construed as largely duplicative of those in section 22A–1A–20(b) and (c). However, there is some indication in *Wiggins* that a West Virginia court would look favorably toward Echard's position that Echard did not need to exhaust his state administrative remedies before asserting a state law claim in a court of law. Chief Justice McGraw noted in *Wiggins* that: "The general requirement of the exhaustion of administrative remedies is not a jurisdictional doctrine, but is a matter of comity, within the discretion of the trial court." 357 S.E.2d at 748 (citations omitted).

Because this Court concludes in this opinion that plaintiff may not pursue any of his federal claims, either for retaliatory discharge or for age discrimination, plaintiff's state law claims should best be determined in a West Virginia state court. Further, since plaintiff has seemingly set forth a state law claim of discharge in violation of West Virginia public policy, *see Harless,* 246 S.E.2d at 275, this Court will leave for determination by the courts of West Virginia on remand of the within case the question of whether exhaustion of state administrative remedies is required under West Virginia law.

### Age Discrimination (ADEA) (Federal)

■ At the time of his discharge, plaintiff was 56 years old and one year of employment away from the vesting of his retirement benefits. Contending that Con-

solidation provoked the fight as a pretext for firing him, plaintiff filed a charge of age discrimination with the EEOC on November 1, 1982. After conducting an investigation, the EEOC made a determination that it would proceed no further with its processing of the charge and issued a "private right to sue" letter. Echard never filed any charges directly with West Virginia's Human Rights Commission.

On January 27, 1984, plaintiff instituted this suit in federal district court alleging age discrimination in violation of the laws and policies of the United States and of the State of West Virginia. Specifically, plaintiff raises those claims under 29 U.S.C. § 621, *et seq.* (ADEA) and also under W.Va.Code § 5–11–10. Defendants assert that plaintiff is barred from pursuing his federal ADEA claim for failure to file a charge with the West Virginia Human Rights Commission.

In *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 758, 99 S.Ct. 2066, 2072, 60 L.Ed.2d 609 (1979), the Supreme Court held that resort to administrative remedies in deferral states [8] is mandatory under section 14(b) (29 U.S.C. § 633(b)) of the ADEA. That section reads:

> In the case of an alleged unlawful practice occurring in an state which has a law prohibiting discrimination in employment because of age and establishing or authorizing a state authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier termination: *Provided,* That such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State law.[9]

In *Oscar Mayer,* Justice Brennan concluded (at 758) that a federal suit may not be brought under the ADEA unless the claimant has first commenced a proceeding with the appropriate state agency, stressed Congress' intent to eliminate from the federal courts discrimination matters which could expeditiously and appropriately be handled in a local setting, and remanded the case, noting the "possible unfairness of applying its [the Supreme Court's] just announced mandatory state filing interpretation of section 633(b) to the claimant." [10] *Cornett v. Avco Financial Services,* 792 F.2d 447, 450 (4th Cir.1986). In *Cornett,* Judge Phillips interpreted *Oscar Mayer* as conferring considerable discretion upon a federal district court in a given case to deal fairly with any claimant who has failed to commence proceedings with the appropriate state agency. *Id.* at 450.

In *Cornett,* the plaintiff was employed for 19 years, until August, 1978, by AVCO Financial Services in its West Virginia office. In the month of his discharge, Cornett filed a charge of age discrimination with the United States Labor Department, which transferred the charge to the EEOC as then required. The EEOC referred Cornett's complaint to its Philadelphia office because AVCO's West Virginia office was within that office's geographical jurisdiction. The EEOC Philadelphia office then referred the complaint to the EEOC Los Angeles office, the place of AVCO's principal place of business and home office. The

---

8. "Deferral states" have employment discrimination laws and state agencies to provide relief from unlawful discriminatory practices. W.Va. Code § 5–11–4 (1987 Repl.Vol.) empowers the West Virginia Human Rights Commission to "strive to eliminate" discrimination in employment and the EEOC identifies this agency as being covered by section 14(b) of the ADEA. *See* 29 C.F.R. § 1601.74.

9. W.Va.Code § 5–11–10 provides a remedial scheme to be followed by any person claiming to be aggrieved by an alleged unlawful discriminatory practice. As originally enacted, that code section required such a person to file a complaint with the West Virginia Human Rights Commission within 90 days after the alleged act of discrimination. A 1987 amendment enlarged that period to one hundred and eighty days.

10. On remand, the claimant was allowed to commence a state proceeding notwithstanding that the federal action had already been filed. The Supreme Court directed that the federal action be held in abeyance for at least sixty days to allow the state to process the claim if it so desired. *Oscar Mayer,* 441 U.S. at 764–65, 99 S.Ct. at 2075–76.

EEOC Los Angeles office referred Cornett's complaint to the California State Department of Fair Employment and Housing which notified Cornett of such referral. Cornett's complaint was never referred to the West Virginia Human Rights Commission.

The EEOC subsequently informed Cornett that conciliation efforts had been unsuccessful and that the EEOC would take no further action. However, the EEOC did note that Cornett could proceed as a private litigant.

In August, 1980, Cornett instituted suit in the United States District Court for the Southern District of West Virginia. One month later, in its answer, AVCO asserted the affirmative defense that Cornett's claim was barred by his failure timely to have commenced appropriate state proceedings. Two years later, in September, 1984, the District Court granted AVCO's motion to dismiss on those grounds. Citing to *Oscar Mayer*, the District Court held that Cornett should have filed his claim in West Virginia where the alleged act of discrimination occurred, and that the California filing did not meet *Oscar Mayer*'s mandate. *Id.* at 448–49.

In *Cornett*, the Fourth Circuit affirmed the District Court's ruling. Bearing heavily on its decision not to find an abuse of discretion on the part of the District Judge were the age of the *Oscar Mayer* decision (it had been decided in 1979) and Cornett's failure to commence state proceedings when confronted with that deficiency in the fall of 1980. *Id.* at 450.

Application of the teachings of *Oscar Mayer* and *Cornett* to this case leads this Court to the determination that plaintiff is barred from pursuing his federal ADEA

claim because of his failure to file a charge with the West Virginia Human Rights Commission. Plaintiff has admitted in his deposition that no such filing was made (at p. 48), and plaintiff's counsel has not demonstrated that the requisite state proceedings were otherwise commenced.[11] That deficiency alone is sufficient to bar plaintiff's cause of action under the federal ADEA unless other circumstances warrant equitable modifications. Herein, no such circumstances exist. *Oscar Mayer*'s mandatory state filing requirement has been the law since 1979. Since plaintiff's discharge in 1982, seven years have passed. Plaintiff has had the assistance of counsel since at least 1984; yet no compliance with *Oscar Mayer*'s directive has taken place. If equitable modification was denied in *Cornett* based upon the plaintiff's inaction combined with agency fault, such modification should not be afforded here where the failure to commence state proceedings is solely the result of plaintiff's inaction.[12] Therefore, plaintiff's federal age discrimination may not be pursued in this case.

### *Pendent Jurisdiction over State Law Claims*

■ The dismissal of the federal retaliatory discharge and age discrimination claims stated by plaintiff in this case leaves outstanding only resolution of plaintiff's state law claims. Under the circumstances, this Court will exercise its discretion to dismiss plaintiff's pendent state law claims with respect to retaliatory discharge, age discrimination and intentional infliction of emotional distress.

In *Johnson v. Town of Elizabethtown*, 800 F.2d 404 (4th Cir.1986), Judge Ervin

---

**11.** To afford state agencies the opportunity to remedy alleged employment discrimination concurrently with the EEOC, section 1601.13 of the EEOC's Procedural Rules and Regulations, 29 C.F.R. § 1601.13 (1987), provides for procedures to defer some claims to the appropriately designated state agency. That section also empowers the Commission to enter into "worksharing agreements" with state and local agencies "to establish effective and integrated resolution procedures." There is no indication in the record in this case that plaintiff's claim could have been or ever in fact was forwarded by the EEOC

to the West Virginia Human Rights Commission.

**12.** In the light of this Court's determination that plaintiff's ADEA claim is barred, there is no need for this Court to address defendants' claim that plaintiff fails under federal law on the merits with respect to plaintiff's age discrimination assertions. As to similar assertions by defendants under West Virginia law, this Court leaves that issue to the state court on remand.

enumerated three requirements for the proper exercise of pendent jurisdiction:

(1) the existence of "a common nucleus of operative fact" under U.S. Const. art. III, *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966);

(2) the absence of congressional negation of jurisdiction "expressly or by implication" in the relevant jurisdictional statute, *Aldinger v. Howard*, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976); and

(3) the existence of prudential concerns favoring the exercise of jurisdiction, *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

800 F.2d at 407.

The first two criteria are seemingly met in the case at bar. However, that is not true as to the third contention. In *Gibbs*, the Supreme Court emphasized:

Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surerfooted reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

383 U.S. at 726, 86 S.Ct. at 1139.

Here, this Court's overriding concern is the developing nature of West Virginia law. A federal court's construction of West Virginia's evolving wrongful discharge law and determination of whether Echard's discharge violated a substantial West Virginia public policy, especially in the mining context in which plaintiff's claims are presented, are far less preferable than leaving those tasks to be handled within the West Virginia court system.

Also, since this action was removed to this federal court from a state court, the passage of time between such removal and remand back to the state court at this time will not seemingly prevent plaintiff from proceeding in that court without fear of being barred by limitations or the like, although whether such a bar exists is a matter for the West Virginia state court to determine on remand.

Accordingly, this action will be remanded to the Circuit Court of Monongalia County, West Virginia for consideration of all of plaintiff's within state law claims.[13] As to plaintiff's federal law claims, summary judgment will be granted by this Court for the reasons discussed in this opinion.

13. In *Financial General Bankshares, Inc. v. Metzger*, 680 F.2d 768, 778 (D.C.Cir.1982), Judge Wright, in ordering that the District Court remand certain "state" law claims to the Superior Court of the District of Columbia, instructed the District Court not to dismiss state law claims with respect to which the District Court had exercised pendent jurisdiction "until the plaintiff has filed an action in the Superior Court of the District of Columbia and the defendant has filed in that court a record waiver of any applicable statute of limitations." 680 F.2d at 778.

In this case, this Court has not suggested such a waiver because of Congress' failure to provide a federal cause of action for retaliatory discharge and because the strong policies underlying *Oscar Mayer*'s insistence on utilization of the state's administrative age discrimination process suggest that this federal court leave to the state court on remand the question of whether or not Echard's state law claims for retaliatory discharge, age discrimination, or intentional infliction of emotional distress are barred by limitations or the like.